number 1 5 2 5 7 1 and number 1 6 1 9 6 4 Victor Garcia Garcia versus Loretta Lynch Thanks Good morning, your honor. My name is Nancy Kelly and I represent the petitioner. I would ask the court to allow me to reserve two minutes of my argument. Thank you. Mr. Garcia was found to be a refugee deserving of protection under the higher fair probability standard for withholding removal. He was denied the opportunity to have his application for asylum heard because DHS reinstated prior proceedings from seven years earlier after he reentered the United States with his teenage son seeking protection from persecution. Do you mind just moving the microphone a little closer to you? Is that better? Yeah, that's better. The result of the decision is that he will be separated from his wife and seven children who remain behind in Guatemala and living under fear of persecution. What do you say to the government's argument that we don't have jurisdiction? Your honor, the government has argued that the petition that we filed challenging the appeal of the denial of the asylum case was jurisdiction to review a final order. Well, I understand that that's your position, but the BIA's order does contain a provision remanding the case for a further security check with respect to the counterpart application for withholding of removal. At least three of the courts of appeals have read the statute which limits our jurisdiction to final orders as saying the presence of such a remand order eliminates the final order character and prevents us from hearing the appeal until that security check is completed. In order that grants relief in part, denies relief in part, and provides for a remand for further proceedings to firm up one aspect of the grant of relief, in a sense doesn't have the feel of being final. So why do those courts want? Your honor, the courts have focused and this court has focused on the distinction between a ministerial remand and a remand that could result in further proceedings. The remand in this case, the issue which was before the board on appeal was whether Mr. Garcia was eligible to apply for asylum. It was remanded for security checks and the entry of the removal order. First, the security checks were, as a practical matter, they were up to date. They did not need to be redone. It was simply a matter of entering the order. What was remanded was not whether he was removable, which was a final order. You see, that doesn't matter. Because the definition of a final order is that all claims are adjudicated by the order, all claims that are pending before the court or agency. And these two claims were tied together, asylum and withholding and removal. So if one of them is still open, there is no final order. Your honor, there are two issues here. One is the definition of a final order includes a finding of removability as well as an order of removal. What we have here was a finding of removability. Nonetheless, we did in fact file a second petition once the judge entered the second order granting removal. So we filed another petition to the court and we've joined those cases. So this court has essentially two petitions in front of it. Right. Now, that's the first I'm hearing of this. Has there been any consolidation of those two petitions? Yes, your honor. Okay. And when did that occur? That's all right. I'll check our records. Yeah, it was probably a month and a half or two months ago. So this is appeals from the denial of two appeals, the denial of two separate orders? Yes, your honor. We filed a petition for review once the initial order was entered by the board of immigration appeals. We then filed a motion before the immigration court asking that they enter a final order on the removal issue. Once that order was entered, we filed another petition for review and then we moved to consolidate the two cases. And from your point of view, I think the reason we haven't been advised is that normally a new petition would go through a briefing schedule, etc. But you see no need for briefing on that second petition because it merely is meant to reinforce the first petition and eliminate this jurisdictional question. Correct, your honor. Okay. The other question... Just so I understand, it's not maybe not what you said made this a moot point, but just so I understand it. In a case like this where withholding a removal is not withholding a removal in the abstract, but it's you may not be removed to X country. Yes. What would the security check do? Well... If they find your security risk, I still can't send you to that country, I assume. Well, your honor, conceivably, conceivably, if my client had committed a crime that would have reached the higher level of a large withholding of removal, then the immigration judge could have denied removal at that point. Even to go to that country, even when there's a well-founded fear that he'd be pursued in that country? Yes, your honor. What would remain would be a torture convention claim. That was not the case here. The records checks were, in fact, current. And the question is whether he would meet... There is a conceivable scenario under which the case could be reopened, and that would essentially involve him having committed an act which would have made him eligible under the higher bars. In order to get where you want to get, wouldn't you have to somehow get a review of the original removal order? Because what you're saying, I think, is that the original, he did not have due process at the time of the original removal, the first removal. Your honor... So how do we have jurisdiction if we... Your honor, we're not at this point challenging the original removal order, although we do not believe that he did get due process. We are not challenging that. What we are challenging is the agency's interpretation of a statute through a regulation which deprives him after re-entering from applying for asylum. So you're saying that the language of the statute permits him to reapply any person, in effect, notwithstanding the fact that he was removed before, and you don't here raise the question about the due process aspect of that earlier removal? Correct, your honor. Just one last point on the jurisdictional issue. So you've got two petitions, you say, that have come to us? Yes. The asylum petition is a separate order, separately appealed, and therefore you say, final. The other one, I don't quite understand what you're doing with respect to the... You got what you... Your honor, this is in fact the conundrum that a client in Mr. Garcia's position finds himself. He takes an appeal of an immigration judge's decision, granting withholding and denying asylum. All he appeals is the asylum part. That, the board issues an order denying asylum. He would appeal that, and in fact, would have to appeal that, file a petition for review to the circuit if he wants to get review of that. He's left with the choice, then, of either doing that, or waiting until the immigration court below issues an order, which is essentially a grant of what he's asking for, because at that point, the court is only reviewing the withholding of removals and had to review them. Except that, as you just said, that maybe the security checks will work out in a way that they will reverse themselves on the withholding or removal. And I guess the question is, in that setting, maybe this just takes us back to the finality issue. Why wouldn't it make some sense, then, to wait? Then we would hear the asylum issue and the withholding of removal together, each of which you'd be burdened by. If, on the other hand, the BIA, after the remand order, says, well, after security checks, we still withhold removal, then everything that you want to appeal would be available, which would be just the asylum petition. Counsel, let me see if I can straighten this out. There's a misunderstanding here. Both of your petitions, as I understand it, raise exactly the same questions. The only difference between them is timing. The second petition is filed after the security check has been completed and has verified that the withholding of removal order can stay the way it is. Correct, your honor. And so our position is that that second petition covers the entire case. So, what is the practical effect on him now? He's here. He can't be removed. But he has no status. Correct, your honor. The practical effect on our client is that he lives in a state of limbo. He lives under a removal order. Under that order, he cannot petition to bring his family members in. He'd have greater rights if he was here under a grant of asylum and you say that's what he's entitled to. Correct. If he were granted asylum, he would have the opportunity to bring his family members here. He would have the opportunity to apply for permanent residence status and then to move on to citizenship. So, in effect, he'd be able to live his life here. He'd be able to assimilate to this country. Does this mean that this is a special kind of withholding of removal that he got? Yes. Presumably, there's also just a general withholding of removal that one can see.  There are two forms of relief that you are considered for if you file an invocation for asylum. One is asylum, which gives you the right to move forward with your life. And that is judged by a well-founded fear standard. You're also considered for withholding of removal, which has a slightly different standard. It has a clear probability of persecution standard. The distinction in how they are considered is that the standard for asylum is slightly lower because it's a well-founded fear. Where the standard for withholding is slightly higher. And the bars to eligibility for asylum are higher. And the bars for withholding are lower. So, in effect, you could have a crime on your record that would render you ineligible for asylum and not withholding. The part of the statute that says you can't get any relief if you've got a reinstated removal order, you're saying that that can't be read to deny you getting asylum relief. And I guess I'm just wondering, does that same logic extend to all other forms of relief? In other words, why is asylum something that you can get, notwithstanding the bar on getting relief, which is stated in general terms? Because it's a unique thing that you can get, so that there's other types of relief you can get? Well, asylum and withholding are both unique forms of relief. Because what they recognize is that you are entitled to protection from persecution in your own country, and the Torture Convention as well. They recognize our country's obligations under an international treaty to provide protection to refugees. And in that sense, they're very distinct from the other forms of relief. But I guess this as a textual matter, they're relief like other forms of relief, but they have a special status, so we should read that into the text. Is that the argument? That's not the only argument, Your Honor. If you take a look at both provisions, the asylum provision and the provision that the government provides on for reinstatement, were added to the statute through the same piece of legislation to Amira. The asylum section gives very specific delineations of who is eligible to apply for asylum. There's a distinction in that statute between who's eligible to apply and who's eligible to be granted, and it's very, very carefully laid out. That provision also makes reference to an expedited removal provision in the statute, and indicates that that can, in fact, be used on an applicant for asylum who enters the country without authorization. So it has looked, the legislative history indicates that Congress really looked at the issue of trying to protect against abuse of the system, but at the same time protecting this unique class of individuals. It all depends how you read these statutes, because the Ninth Circuit sitting on bond has just looked at those same statutes and has considered and has held that the prohibition against asylum applications by re-entries after deportation is more specific, that the general asylum statute cannot be read to trump the more specific statute, and that in all events, to the extent there is ambiguity, the regulations which don't favor your client's position are a reasonable interpretation of the conflict in the statute's passing Chevron analysis. So that's the Ninth Circuit on Monarch, and that lines up with the decisions of the only other three circuits that have passed on this question. So you're asking us to create a circuit split? Your Honor, yes. The other circuits that considered this decision first of all, this issue first of all, have done it in an extremely cursory way. They've not really dug into the language of the statute or the legislative history, and they've simply recited a rule that you cannot apply for asylum in these circumstances. The Ninth Circuit's decision, which is Perez-Guzman, I believe, there is a petition for review on bond pending, I believe. The decision that was issued does in fact find that in that case the regulation trumped. But I would submit that that case is in error in several respects. First, they did not really consider all of the textual clues in the statute. They did not really look at the legislative history. But importantly, they specifically said when they looked at the AG's interpretation through the rig, they assumed what the AG meant. They didn't really do an analysis and look at the history to determine what was at play. What they also said, however, was that while they found it reasonable in certain circumstances, they didn't necessarily find it reasonable with regard to someone who did not have the opportunity to apply for asylum previously. So while they were dealing with a particular set of facts, they were not dealing with the facts that were before this court today. Thank you. Good morning. My name is Kevin Conway. I represent the Attorney General in this matter. Mr. Conway, you started off by talking to us a little bit about this second petition for judicial review. Are you aware of it? I am, Your Honor. My understanding was that the other petition for review was a result, came as a result of a petition for judicial review. I have a motion for reconsideration now. I know that there were two docket numbers that are involved in this case that were consolidated. And the briefing schedule for the second one, the 2016 one, was vacated. And they went forward on this petition only. So you don't think the timing of the second petition eliminates the potential jurisdictional problem? I don't think so, Your Honor. Because after the remand in this case, which happened in 2015, which is the case that's before the court, it went back to the immigration judge. The immigration judge's determination wasn't until July of 2016. So it didn't predate the board decision that's before the court. So the immigration judge has since adjudicated his claim again since it was remanded. And if I could address the jurisdiction issue, the government is of the opinion that the petition for review that is before the court is premature or was premature. However, because the... I'm sorry. It's premature and it should have waited until the remand procedure was finished, until the immigration judge had taken his action, and then they could have petitioned from that and would have had all the issues, potential issues, would have been taken care of. That being said, the government is amenable to allowing or is amenable to this court treating the petition that's before the court now as having ripened into a timely petition, as the Ninth Circuit did in the Abdus Salaam case. Because of the fact that it went back for a particular... It went back and it could have resulted in further proceedings or a different result that happened. However, since that didn't occur and the IJ's decision now is final, we are amenable to allowing this case to go forward as a ripened petition for review, if that helps with the jurisdiction issue. So with that, perhaps you can go on to the merits. Your Honor, it is obvious that Mr. Garcia is ineligible to apply for asylum based on INA section 241A5. It's very clearly stated in that statute that individuals in Mr. Garcia's position who are illegal re-entrants to the United States who have been under an order of removal, left the United States and then came back illegally are precluded from having that previous... and whose cases are reinstated are precluded from having that previous decision reviewed and are also precluded from having any relief under the Chapter 12 of Title 8. There is a difference in relief versus protection. And that's been an issue that's been raised in some of the case law. Not in the latest case from the Ninth Circuit, however. Asylum is considered a relief. There are several things. Cancellation of removal, voluntary departure, asylum, and... I forget the other one, but are reliefs under the statute. And things such as withholding of removal and Convention Against Torture are protections because they are available because of international treaties that the United States has with... So, in this, I've got maybe a simplistic view of this, but in this case, his first removal could be a significant argument that he did not get due process. Language, the way it was handled, where he was, that he didn't understand what was needed to be done. And then you look at, he comes back, the facts are fairly clear as to the danger to him if he's removed again. And so we have these asylum treaties which seem to say that we have some obligation to take a look at reality in deciding these cases. And you look at our statute, why should that first action be a bar to it being looked at again? Because that was Congress's will. Congress created a statute that said... What you mean by any person can apply. You're saying that if the first time you got here, illegally, and you're removed, that's a complete bar as you read the statute. Does it have to be read that way? It's not a complete bar. What is a complete bar is when you re-enter illegally, in violation, and as a criminal act. And that's... Congress has carved out that specific group of people. And you have to look at the congressional history of this. Congress at the time, back in 1995-1996 timeframe, had grown weary of individuals who were able to... who would go through the process of applying for asylum or for whatever relief, would be subject to a removal order, be removed, and then re-enter the United States. And at the time, I think it was the section that was applicable, 1252F, gave them the opportunity then to start their removal proceedings over again. And so they wanted to stop that sort of continuous re-entering the country, and then getting an opportunity then to once more apply. I'm just not quite sure how you're coming up with the line that the government's drawn in distinguishing what's relief from this other word, protection. Does that word appear in the statute? The word relief is not defined in statute. Does the word protection appear in the statute? No. Right. So I'm just a little confused. Because you seem to think that there are certain things that arise under international treaties, like the Convention Against Torture, and the provision that leads to our asylum law. And yet somehow that doesn't encompass asylum, but it does encompass the protection against withholding or removal to be sent back to this country. I'm just not following. Well, because the statute itself says that a person in Mr. Garcia's position cannot apply for any relief. Right, but then you say he can. No, I'm saying that's not relief, that's protection. And I'm just not getting where you're devising this line between what's in the category of protection unmentioned in the statute, and what's in the category of relief which is mentioned in the statute. It seems a little hard to say Congress's will is what's guiding us, when there's no clue that Congress is aware of this distinction. Not that I can see if identified. Well, there are things that through case law that traditionally are thought of as or referred to as relief. But they sometimes use the word protection, they sometimes use the word relief. I mean, is that really the... Do the regulations help us at all in this inquiry? In the respect that... In respect to differentiating between what you call relief and what you call protection? No, they do not. I mean, they don't define those terms either. The regulation doesn't define the term either. But asylum is something that is considered separate because asylum is a grant from the sovereign, from the United States. It's giving something to the applicant. Same with cancellation of removal or voluntary... I understand that you're describing differences between these things. What I don't fully understand is why is that description relevant to how one would construe the word relief? I just don't... I don't see what the government's dividing line, how it's explaining that we're getting that from. It gets it from case laws where the government is... Where we define the difference between the two. What's the evidence that Congress is using the word relief meant to incorporate that distinction from the case laws? I mean, it's just you to say, who knows, and so therefore Chevron? I mean, that's the idea? Well, the 9th Circuit in this case looked at the case... The difference between the two... Looked at the legislative history of this case, the congressional history of this, and determined that in this case that the regulation implementing... And they found a difficulty with looking at it and saying that it's unambiguous. Our argument was that it is ambiguous on its face because of what it says. They looked at it and found that it was not necessarily unambiguous on its face. Then they went to Chevron Step 1 and determined that they could not find that it was... That that was helpful. And then they went to Chevron Step 2 and looked at the implementing regulations. And found that the implementing regulations... But if I understand your argument, you don't... Is there anything in the statute that would distinguish the withholding of removal from asylum? That would indicate that Congress, in using that word relief, meant to carve out an exception for one but not the other? Like I said previously, there is no definition of what relief is in any statute, even in the asylum statute itself. I mean, it doesn't define relief. What the relief is... Well, can you explain to me what position this man currently has, the petitioner? He's here. He can't be sent back at the present time, but he has no rights. He can't apply for citizenship. He's just here. That's correct, Your Honor. And so, as a person just here, can he work? I don't believe that he can get a work permit. That's my understanding. So, can he be removed to another country? Yes, he can. So, or at any time, if the situation allegedly changes in his home country, he can be sent back there? That's correct, Your Honor. So, for all practical purposes, what you're saying is the statute, because of the prior removal, means that even though the facts may say he's entitled to asylum, he's in perpetual limbo. That's where we're left. I wouldn't describe it that way, Your Honor, but... That's a pretty accurate description for what you just told me. It's true. He has a... From the court of immigration judge, he reached a higher threshold of showing that he's rated or was eligible for or should be given with holding of removal. Can he be detained? What happens to him? Unless you mean, like, while he's here? Yeah. Under the existing status, according to the government's position, is there any authority to detain him now? I'm assuming the answer is no. No. Is that because removal has been withheld? Correct, Your Honor. So, I guess... Well, what's the reason? I mean, maybe this is what... I don't know if this is what Judge Stahl is getting at, but what is the reason, the basis for concluding that what Congress must have wanted is that people like this must be kept in this situation, not detained, free to walk about, but they can't work, they can't do any of these things. And they also can't, even though they can qualify, get a status that would enable them to stay here in a more meaningful way, asylum. Why is that reasonable? I'm not really sure. Why is it reasonable that you can get withholding of removal and can't get asylum? No, look, I look at this and it makes no sense to me. The position makes no sense. We recognize that this person is apparently under real threat if we send him back. But because of his original removal, now that he's back here again, illegally, I grant that, but the facts seem to be fairly clear that sending him back will endanger his life, pretty clearly. And so he's here in limbo. He can't work, he can't probably get any benefits of any kind, I understand all that, but is that what Congress actually meant to do? Or does the asylum statute mean something somewhat different than the way the courts have interpreted us up to now and the bureaucracy? I mean, one way to think about it is, as long as the government is going to read relief to allow the protections for people who are at risk of being tortured or persecuted to still be available, which seems like a perfectly sensible thing for the government to have read the statute to do, it just seems somewhat arbitrary to then cut off the line at asylum and don't quite follow why that would be. You think those might be a category that would travel together. Even when you describe it, you say these are all protected by these specific international treaties. So you might have thought, well, as a bundle, I could see taking them all together and reading that as an exception to the statute, or as a bundle, saying we won't read them in, but that seems a lot to attribute to Congress that they intended to violate all those treaties, so you wouldn't do that. But you've kind of picked this halfway thing where you get these protections, but then you're confident Congress would have intended for you to leave it, be that they then can't get the further protection. What's the logic of it? I'm not saying there can't be any, but I'm just not hearing it. I don't know the answer to your direct question, to be honest with you. What I know is what the case law has held and what the cases, the courts that have read this or have dealt with this issue have decided. Overwhelmingly, they have decided that 1231A5, as it's written, has the intent of Congress to preclude individuals in Mr. Garcia's position to be precluded from applying for relief, any relief under the statute, which includes asylum. Thank you. Thank you, Your Honor. Thank you, Your Honor. Counsel, what makes this case peculiarly difficult on the facts is that we've got an individual who has been adjudged worthy of withholding of removal, even though he's ineligible for asylum. Are you aware of any case with that kind of anomaly, with that situation? It seems to me all of the cases have been cases where the courts were construing the statutory combination based on an up-and-down claim that asylum was or was not relief within the meaning of the preclusion statute. Your Honor, there is a situation which rarely arises, but could arise, where the statutes contain bars to eligibility. Okay, there's very clear bars to eligibility here. There is a, you could be convicted of what would be considered to be a particularly serious crime, which makes you a danger to the community, and that would bar your eligibility for asylum. Because asylum has a discretionary element which has to do, this court has looked at that in Sakhar, actually, but it was very clear that it, I'm sorry. But you still get withholding. I'm sorry, let me clarify. First of all, you couldn't be ineligible for asylum if you were convicted of a particularly serious crime. A particularly serious crime encompasses an aggravated felony. Even if you were convicted of an aggravated felony, which would be a particularly serious crime, you might be ineligible for asylum, or eligible for withholding, because withholding has a higher standard there where the crime would have to be more serious before it serves as a bar. So that's the kind of area. How does that then suggest that maybe there is a reason, basis for the BIA's understanding? Because what they would be concluding is, withholding of removal is a protection, but it doesn't stop the possibility of fully removing you, whereas asylum would be further entrenching your rights here. And since we are dealing with a person whose removal is being reinstated, they didn't want to give the person that extra authority, just like in other circumstances, as the one that you know you appreciate in describing it, that you just described, in which it's possible to be at risk of persecution in your home country, but unentitled to asylum. You're right there. If you look at the asylum statute, which again was added to the statute in its current form, it's very, very clear on who is entitled to apply for asylum. You're challenging the... Just so I understand, the legal argument though, that's an argument that Congress foreclosed the agency from adopting its position. You also make the argument that the agency's position is unreasonable on its own terms. And I'm just talking about the second question. So what is a reason for saying that the agency's position is unreasonable, in light of the fact that Congress seems to itself have contemplated just this disjuncture that seems so strange to us? Well, first of all, the agency is relying on this distinction between relief and protection, which exists nowhere. It's not in the statute. It doesn't exist in cases. And relief is a broad, general term that's used basically to apply to any kind of action in a case. What the government has offered as the reason for wanting to limit the right of somebody re-entering from applying for asylum is essentially that people would abuse the system by coming in and applying for asylum over and over again and clogging up the courts. The statute specifically incorporates the asylum provision in its authority to apply section specifically makes reference to the expedited removal process. There, it doesn't reference the re-entry or the reinstatement provision, but it makes specific reference to that, indicating that that is what Congress intended. If they intended the other, they would have included it. But at its core, the process that is involved once you express a fear, if you are in an expedited removal process, you have a right to a court of fierce crime. If you are in a reinstatement proceedings, you have a right to what's called a reasonable fear screening. For all practical purposes, those two screenings are procedurally the same. So it does not serve any purpose, really, other than to punish legitimate refugees. Thank you. I'll take a break. Yeah. All rise. We'll take a brief recess. Thank you.